[Cite as *Goodman v. Medmarc Ins.*, 2012-Ohio-4061.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97969**

## ALAN I. GOODMAN, ESQ.

PLAINTIFF-APPELLEE

vs.

## MEDMARC INSURANCE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-734744

**BEFORE:** Rocco, P.J., E. Gallagher, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** September 6, 2012

[Cite as *Goodman v. Medmarc Ins.*, 2012-Ohio-4061.]

**ATTORNEY FOR APPELLANT**

Brian D. Sullivan
Reminger Co., L.P.A.
101 West Prospect Avenue
Suite 1400
Cleveland, OH 44115

**ATTORNEYS FOR APPELLEE**

Lynn Sheftel
Daniel J. Nealon
55 Public Square
Suite 1300
Cleveland, OH 44113

KENNETH A. ROCCO, P.J.:

{¶1} Defendant-appellant Medmarc Insurance ("Medmarc") appeals the trial court's decision granting plaintiff-appellee Alan I. Goodman's ("Goodman") summary judgment motion and denying Medmarc's summary judgment motion. Medmarc asserts that it is not required to defend and/or indemnify Goodman for legal malpractice allegations. Because the trial court's final judgment properly concluded that Medmarc is required to provide Goodman with a legal defense and/or indemnification, we affirm.

*The Underlying Lawsuit*

{¶2} Goodman represented Jerry Stephens ("Stephens") in an employment case against the Veterans Administration. Stephens contends that Goodman committed malpractice in his representation, including Goodman's failure to timely file an appeal.

{¶3} Stephens received an adverse ruling from the Merit Systems Protection Board ("MSPB") and planned to appeal the decision. Due to a series of events, the brief was not timely filed and the United States Court of Appeals, D.C. Circuit refused to reinstate the appeal. Goodman contacted Stephens, advised him of what had occurred, and offered to refund the retainer Stephens had paid for the appeal.

{¶4} Goodman and Stephens memorialized the agreement to refund the money in a document dated June 16, 2009, entitled "Appeal Resolution." At

this time, Stephens did not express dissatisfaction with Goodman's representation nor did he indicate that he planned to sue.

{¶5} Goodman did not hear from Stephens again until he received a letter from Attorney Slavin dated February 18, 2010, stating that Stephens was considering filing a malpractice action against Goodman. Stephens avers that he had not contemplated suing Goodman until Stephens consulted with a bankruptcy attorney in January 2010. The bankruptcy attorney advised Stephens to contact another attorney regarding how Goodman had handled the appeal. On March 8, 2010, Stephens filed a complaint against Goodman for legal malpractice.

*The Policy*

{¶6} Goodman carried a policy with Medmarc from February 15, 2009, to February 15, 2010. On February 14, 2010, Goodman completed a claims made application ("Application") with Medmarc, requesting the same limits as in his previous policy. At the time that Goodman completed the Application, he had not had contact with Stephens for approximately eight months. The Application asked whether Goodman was aware of any possible claims or to any errors or admissions that might reasonably be expected to be the basis of any claims. Goodman replied "no" to these questions.

{¶7} Based on the Application, Medmarc issued the policy in issue which provided professional liability coverage, effective at the expiration of the earlier policy. Both policies provided coverage based on when the claim was made.

{¶8} Medmarc denied any obligation to provide coverage to Goodman for the Stephens's action. On August 20, 2010, Goodman filed a complaint for declaratory judgment seeking a declaration that Medmarc was obligated to defend and/or indemnify Goodman for the allegations asserted against him by Stephens. Medmarc filed a counterclaim, seeking a declaration that it was not obligated to provide coverage to Goodman. Both parties filed motions for summary judgment. The trial court granted Goodman's motion and denied Medmarc's motion. Medmarc appeals the trial court's entry of final judgment and presents three assignments of error for review.

"**I. The trial court incorrectly denied Medmarc's motion for summary judgment and in so doing improperly declared that Medmarc has a duty to defend and/or indemnify Goodman for Mr. Stephens' allegations of legal malpractice.**

"**II. The trial court incorrectly granted Goodman's motion for summary judgment and in so doing improperly declared that Medmarc has a duty to defend and/or indemnify Goodman for Mr. Stephens' allegations of legal malpractice.**

"III.  The trial court incorrectly denied Medmarc's rescission claim."

{¶9} We consider the assignments of error together as the legal analysis involved is the same.  The trial court determined that the Policy required that Medmarc defend and indemnify Goodman for Stephens's malpractice claim.  First, the trial court determined that the claim was not made until March 8, 2010, a date falling within the Policy period.  Second, relying on *Allstate Ins. Co. v. Boggs*, 27 Ohio St.2d 216, 271 N.E.2d 855 (1971), the trial court determined that Medmarc was not entitled to rescind the Policy.

{¶10} On appeal, Medmarc contends that the claim was first made at the time that Goodman and Stephens signed the "Appeal Resolution." Because this document was executed prior to the Policy period, Medmarc argues that it is not required to defend and/or indemnify for this claim. Alternatively, Medmarc contends that, even if the claim first arose during the Policy period, Goodman had a reasonable basis to believe that his failure to prosecute Stephen's appeal was a breach of a professional duty and could result in a claim against him.  According to Medmarc, this renders the Policy void ab initio.  Neither of these arguments is well taken and so we overrule the first and second assignments of error.

{¶11} We review summary judgment rulings de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate when there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6.

{¶12} The crux of this appeal involves two questions on the Application and Goodman's answers to those questions:

> 4. After inquiry of all lawyers and employees of the law firm, including independent contractors, Of Counsel and any other affiliated lawyers, is any such person aware of:
> A professional liability claim made in the past 5 years (either still open or closed)? ... Yes   X No
> An act or omission that might reasonably be expected to be the basis of a claim? ...   Yes   X No

Medmarc makes a number of arguments contending that Goodman's "no" answers rendered the Policy void ab initio. We first address Medmarc's argument that the "Appeal Resolution" that was executed before the Policy went into effect constituted a "claim." The Policy covered only those claims that were made during the Policy period. According to Medmarc, the "Appeal Resolution" was the initiation of the claim, and because the "Appeal

Resolution" occurred prior to the Policy's effective date, Medmarc is not required to defend or indemnify Goodman for this claim. The Policy defines a "Claim" as follows:

> a demand for money or services made against any "Insured", including service of a suit, arbitration proceedings or a motion against any "Insured", alleging negligent acts or negligent omissions, or alleging "Personal Injury", resulting from the performance of or failure to perform "Professional Services" by any "Insured." A "Claim" includes any complaint, grievance or other allegation of wrongdoing made against any "Insured" to any disciplinary agency or board. A "Claim" is deemed "made" against any "Insured" when any "Insured" first receives notice, either oral or written, of such "Claim."

Policy § II.B.

**{¶13}** The uncontroverted affidavits from Goodman and Stephens establish that, at the time the "Appeal Resolution" was executed, there was no demand for money or services made against Goodman, nor any suit, arbitration proceeding, motion, complaint, grievance, or other allegation of wrongdoing. Rather, the affidavits establish that Goodman informed Stephens that he had not filed the appeal; that Goodman agreed to return the $6,000.00 Stephens had given him to file the appeal; and that at that time neither party contemplated any further action. Stephens indicated in his affidavit that he was not displeased with Goodman's representation and did not intend to sue Goodman at the time that they executed the "Appeal Resolution."

{¶14} Stephens did not communicate any intention to file a claim against Goodman until he sent Goodman a letter, dated February 18, 2010. The complaint was not filed until March 8, 2010. As the policy period was from February 15, 2010 to February 10, 2011, the claim was made during the policy period.

{¶15} Medmarc next argues that the Policy provides coverage only if Goodman had no reasonable basis to believe that he committed acts or omissions that could result in a claim against him. On the Application, Goodman answered "no" to the question of whether he was aware of an act or omission that might reasonably be expected to be the basis of a claim. According to Medmarc, Goodman's "no" answer constituted a warranty, Goodman breached that warranty, and, therefore, the Policy was void ab initio. We disagree.

{¶16} In *Allstate Ins. Co. v. Boggs*, 27 Ohio St.2d 216, 271 N.E.2d 855 (1971), the Ohio Supreme Court explained the difference between a warranty and a representation when an insured is applying for insurance. The difference is important because if a misstatement on an insurance application constitutes a warranty, the policy is void ab initio. A statement "does not constitute a warranty unless the language of the policy, construed strictly against the insurer, requires such an interpretation." *Id*. at 219. The Court explained that "[i]f it is [the insurer's] purpose to provide that a

misstatement by the insured shall render the policy void ab initio, such facts must appear clearly and unambiguously from the terms of the policy." *Id.* If the misstatement constitutes a representation, the policy is voidable if the misstatement is made fraudulently and the fact is material to the risk. But the policy is not void ab initio. *Id.* at 218-219.

{¶17} *Boggs* established a two-pronged test for determining whether a misstatement qualifies as a warranty. *Am. Family Ins. Co. v. Johnson*, 8th Dist. No. 93022, 2010-Ohio-1855, ¶16. The first prong requires that the "representation [] plainly appear on the policy [] or be plainly incorporated into the policy * * *." *Id.* Under the second prong, the policy must plainly warn that a misstatement or misrepresentation renders the policy void from its inception. *Id.*

{¶18} In *Med. Protective Co. v. Fragatos*, 190 Ohio App.3d 114, 2010-Ohio-4487, 940 N.E.2d 1011 (8th Dist.), we concluded that the statements set forth in the insurance application were incorporated into the policy and constituted warranties. In *Fragatos*, the policy in issue stated: "It is understood and agreed that the statements made in the insurance application are incorporated into, and shall form part of, this policy * * *." *Id.* at ¶31. Further, the application contained a "warning that any material misrepresentation would render the policy 'null and without effect,' [which

was] equivalent to warning that the policy is void ab initio." *Id.* at ¶33. When viewed together, the policy and application language satisfied both prongs of the *Boggs* test and the statements constituted warranties.

**{¶19}** Conversely, in *Johnson* we concluded that the statements constituted only representations. In that case, the insurance policy stated:

> * * * We will provide this insurance to you in reliance on the statements you have given us in your application of insurance. You warrant the statements in your application to be true and this policy is conditioned upon the truth of your statements. We may void this policy if the statements you have given us are false and we have relied on them.

*Johnson*, 2010-Ohio-1855, ¶16. We concluded that "the policy merely mentions the application; it does not state that the application is part of the policy." *Id.* ¶18. Further, the policy failed to "specifically state that a misrepresentation as to prior claims would render the policy void ab initio. Instead, it generally states that the false statements on the application may void the policy." *Id.* **{¶20}** Similarly, in *James v. Safeco Ins. Co. of Illinois*, 195 Ohio App.3d 265, 2011-Ohio-4241, 959 N.E.2d 599 (8th Dist.), we determined that the application statements constituted representations as opposed to warranties. In *James* we concluded that language stating "'we *may* void this policy * * *,' is not a clear warning to the insured that a misstatement *shall* render the policy void." *Id.* at ¶25, emphasis in original. Such language is only "a general statement reflecting the long-standing point

of law that a 'contract induced by fraud is not void, but is voidable at the election of the one defrauded.'" *Id.*, quoting *RR. Co. v. Steinfeld*, 42 Ohio St. 449, 455 (1884).

**{¶21}** In applying the two-part *Boggs* test and our prior case law, we conclude that the statements made by Goodman on the Application constitute representations, not warranties.   The Policy states as follows:

K. Application

By acceptance of this Policy, the **"Insureds"** agree that: 1) the statements in the application and in all additional materials submitted by any **"Insured"** for this Policy or for any prior Policies   issued by this Company, which are made a part of this Policy, are personal representations, that they shall be deemed material and that this Policy is issued in reliance upon the truth of such representations; ***."

Policy § IV.K, emphasis in original.

**{¶22}** While the Policy does make explicit that Goodman's answers to the Application questions are incorporated into the Policy, the Policy fails under prong two of the *Boggs* test, because it fails to plainly warn that a misrepresentation about potential claims renders the policy void ab initio. Accordingly, under our prior case law, Goodman's "no" answers on the Application do not constitute warranties under the *Boggs* test.

**{¶23}** Because the answers were representations and not warranties,

even if misrepresentations[1] were made, they did not render the policy void ab initio. Although an insurer may cancel a voidable policy, a representation "may not be used to avoid liability arising under the policy after such liability has been incurred." *Boggs*, at paragraph one of the syllabus. Medmarc was not entitled to cancel the Policy after Stephens filed the malpractice lawsuit against Goodman. Under the terms of the Policy, Medmarc had a duty to defend and/or indemnify Goodman for Stephens's allegations of legal malpractice. The trial court properly denied Medmarc's motion for summary judgment and granted Goodman's motion for summary judgment. The trial court properly declared that Medmarc has the legal duty to defend and indemnify Goodman with respect to the Stephens's claim. Accordingly, we overrule Medmarc's assignments of error.

{¶24} The trial court's order is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

[1]The parties vigorously dispute whether the "no" answers constitute misrepresentations.

_____
KENNETH A. ROCCO, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MARY EILEEN   KILBANE, J., CONCUR