ROGERS, Circuit Judge,
dissenting.
Because coverage for employee dishonesty under St. Paul’s bond with Cumis terminated only prospectively once Cale-vich learned of Raguz’s dishonesty, I dissent in part.
The fact that Calevich learned of Ra-guz’s dishonesty before February 10, 2010 — when the 2010 bond took effect— does not preclude the 2010 bond from covering the loss that St. Paul sustained from Raguz’s fraud before Calevich learned of the dishonesty. The magistrate judge held, and the majority agrees, that St. Paul lost coverage under the bond’s termination-of-coverage provision. Paragraph three of that provision reads: “Termination of coverage for an ‘employee’ or ‘director’ under paragraphs 1. or 2. above terminates [Cu-mis’s] liability for any loss resulting from any act or omission by that ‘employee’ or ‘director’ occurring after the effective date of such termination.” Here, the “effective date of termination” is when Calevich *439 learned of Raguz’s dishonesty. The magistrate judge did not pinpoint a precise date, but found that this occurred sometime before 2010. Under the plain terms of the bond, Cumis is not liable for any loss that Raguz caused to St. Paul after that date, but nothing in the bond precludes coverage for the loss St. Paul sustained before that date.[1]
A holding that this termination prevented the 2010 bond from ever taking effect conflates the bond’s termination and discovery provisions. The bond’s discovery-of-loss section reads:
This Bond applies to loss discovered by you while this Bond is in effect. Discovery occurs when you first become aware of facts which would cause a reasonable person to assume that a loss of the type covered under this Bond has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred.
Thus, if St. Paul discovered Raguz’s fraud in 2010 (the magistrate judge never reached this issue), the loss that the fraud caused is covered under the 2010 bond, regardless of when the fraud occurred. Of course, the covered loss would be cut off as of the termination date sometime prior to 2010, but there would be coverage nevertheless. Just because Calevich “learned of a dishonest act” prior to 2010 does not mean that St. Paul “discovered the loss” before the 2010 bond took effect; the two are distinct concepts under the bond. As the magistrate judge recognized, learning of an employee’s dishonest act means having knowledge of any “conduct that shows a want of integrity or breach of trust.” In contrast, discovering loss means learning that something has sparked coverage under the bond — a narrower concept. It is entirely possible, then, that St. Paul could have triggered the bond’s termination provision before February 10, 2010, without discovering loss until after that date.
. Therefore, the possibility remains that St. Paul is entitled to coverage for the loss it sustained from Raguz’s fraud before Ca-levich learned of Raguz’s dishonesty.[2] I would remand to the magistrate judge to determine whether that is the case and, if so, the amount of coverage.

. Judge Batchelder correctly contends that the NCUA did not make this argument to the magistrate judge below. But this court’s rules regarding waiver are not absolute. United States v. Ellison, 462 F.3d 557, 560-61 (6th Cir. 2006). We may exercise discretion in a case like this, in which the parties have fully briefed a question of law that was not raised in the court below, to decide an issue that is otherwise waived. See id.

. Under Ohio law, an insurer may not cancel a voidable policy “to avoid liability arising under the policy after such liability has been incurred.” Goodman v. Medmarc Ins., 2012-Ohio-4061, 977 N.E.2d 128, at ¶ 23 (quoting Allstate Ins. Co. v. Boggs, 27 Ohio St.2d 216, 271 N.E.2d 855, 857 (1971)).